
UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>TESSERA, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. C-12-01827 RMW<br><br>**ORDER GRANTING ST. PAUL MERCURY INSURANCE COMPANY'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND DENYING TESSERA, INC.'S PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: Docket Nos. 29, 30] |

On April 12, 2012 plaintiff and cross-defendant, St. Paul Mercury Insurance ("St. Paul"), filed the instant action seeking a declaratory judgment that it has no duty to defend Tessera Inc. ("Tessera"), its insured, in an action brought against Tessera by Power Technology, Inc. ("PTI") in the United States District Court for the Northern District of California, *Powertech Technology Inc. v. Tessera, Inc*., Case No. 11-06121 ("underlying action").  Dkt. No. 1.  St. Paul also seeks reimbursement of the amounts it has paid in defending Tessera pursuant to a reservation of rights. *Id.*  On October 26, 2012, both parties brought motions for partial summary judgment requesting that the court resolve whether St. Paul was obligated to defend Tessera in the underlying action. Dkt. Nos. 29, 30.  Hearing on both motions occurred on November 30, 2012.  Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth

below, the court grants St. Paul's partial motion to dismiss and denies Tessera's partial motion to dismiss.

## I. BACKGROUND

**A. The Contract Between St. Paul and Tessera**

Beginning in May of 2007 and spanning until August of 2009, St. Paul issued three insurance policies to Tessera in which it agreed to indemnify Tessera and defend it against certain claims. Compl. at ¶¶ 5-8. The terms of the each insurance policy are identical insofar as relevant to this action. Specifically, the insurance policy ("the Policy") states:

> **Personal Injury Liability:** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:
> - results from your business activities; and
> - is caused by a personal injury offense committed while this agreement is in effect.
> 
> . . .
> *Personal injury offense* means any of the following offenses:
> . . .
> - Malicious prosecution.
> 
> . . .
> - Libel, or slander, in or with covered material.
> - Making known to any person or organization covered material that disparages the business, premises products, services, work, or completed work of others.
> 
> . . .
> *Covered material* means any material in any form of expression, including material made known or with any electronic means of communication, such as the Internet."

Stip. Re Undisputed Facts ("Stip."), Ex. A, P000000075. In regards to the duty to defend, the Agreement reads: "We'll have the right and duty to defend any protected person against any claim or suit for injury or damage covered by this agreement. We'll have such a right and duty even if all of the allegations . . . are groundless, false, or fraudulent." *Id*. at P000000076. The Agreement also contains the following exclusion as to its indemnity and defense obligations for "intellectual property":

> **Intellectual Property**. We won't cover injury or damage … that result from any actual or alleged infringement or violation of any of the following rights or laws:
> . . .
> Patent.
> . . .
> Other intellectual property rights or laws.
> Nor will we cover any other injury or damage or medical expenses alleged in a claim or suit that also alleges any such infringement or violation.

*Id*. at P000000090.

## B. The Underlying Action

Tessera holds patents to an encapsulation process for packaging semiconductor chips. Tessera licensed those patents to PTI, a chip packager which uses Tessera's encapsulation process. On December 6, 2011, PTI brought suit against Tessera in the underlying action, alleging that Tessera violated PTI's license agreement by initiating a United States International Trade Commission ("ITC") Section 337 Investigation in December 2007 ("ITC proceeding" or "630 Investigation").  Stip. Ex. F.  Though PTI was not a named respondent in the ITC proceeding, Tessera did name a PTI customer in the proceeding, which PTI claimed violated PTI's license agreement and caused damage to PTI's business.  *Id*.  In the operative complaint in the underlying action (the Fourth Amended Complaint), PTI brought claims of breach of contract, breach of implied covenant of good faith, and fraud.  Stip. Ex. I.  PTI also requested declaratory judgments that it had the right to terminate the license agreement, that the license agreement is unenforceable, and that Tessera engaged in patent misuse.  *Id.*  The matter between Tessera and PTI is ongoing. On February 12, 2012, Tessera notified St. Paul of the underlying action with PTI and requested that St. Paul conduct a coverage review.  Stip. Ex. J.  St. Paul agreed to participate in Tessera's defense against PTI in the underlying action, but reserved the right to contest its duty to defend and to seek reimbursement.  *Id*.

3

**C. The Present Action**

On April 12, 2012, St. Paul filed the present action against Tessera seeking a declaratory judgment that it has no duty to defend Tessera in the underlying action and for reimbursement of the fees it has already paid. Dkt. No. 1. On May 21, 2012, Tessera answered and brought a cross-complaint for declaratory judgment that St. Paul has a duty to defend, breach of contract, and bad faith. Dkt. 11. Both parties filed partial summary judgment motions on October 26, 2012 as to their requests for declaratory judgments regarding St. Paul's duty to defend. The claim for reimbursement is not before the court on this motion.

## II.  DISCUSSION

**A. Rulings On Evidentiary Matters**

St. Paul filed evidentiary objections to the declaration of Michael R. Williams ("Williams Declaration") and supporting exhibits (submitted by Tessera with both its motion for summary judgment and its opposition to St. Paul's motion for summary judgment) on the ground of relevance. Dkt. Nos. 34, 40. In his declaration, Williams offers testimony regarding an action entitled *St. Paul Mercury Insurance Company v. Tessera Technologies, Inc., et al.*, Santa Clara Superior Court Case No. 110-cv-172266 ("Santa Clara Action"). While St. Paul is correct that the Santa Clara Action is not a binding authority and has no preclusive effect on this court's decision, this court may nevertheless consider the Santa Clara Action as an instructive authority. *See Hart v. Massanari*, 266 F.3d 1155, 1169-70 (9th Cir. 2001). That litigation involved the interpretation of the same language in the insurance Agreement that is now before this court (but with respect to PTI's claims against Tessera in a different underlying action regarding a different PTI customer), and is therefore relevant to the present matter. The court overrules St. Paul's objections to the Williams Declaration and supporting exhibits.

4

St. Paul also requested judicial notice of certain public documents in the court's docket in the underlying action. Dkt. Nos. 33, 41. The court grants this request, and takes judicial notice of the following: Tessera, Inc.'s Notice of Motions, Motions and Memorandum in Support of Tessera's: (1) Motion to Dismiss and (2) Special Motion to Strike filed on December 30, 2011, in the underlying action.

**B. The Duty To Defend Under California Law**

The issue is whether the Agreement between St. Paul and Tessera obligates St. Paul to defend Tessera in the underlying action. California law broadly construes the duty to defend. In California, the insurer's duty to defend is more broad than the insurer's obligation to indemnify covered claims, such that an insurer may have a duty to defend where it would not have a duty to pay damages. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). The operative inquiry is not whether the underlying complaint specifically names the claims covered by the policy, but rather whether there is a *potential* for liability for a covered cause of action under the policy based on the allegations in the complaint and any extrinsic facts known to the insurer at the time the duty to defend arises. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993); *CNA Casualty of Cal. v. Seaboard Surety Co.*, 176 Cal. App. 3d 595, 605 (1986). While the initial determination of the duty must depend on a close reading of the third-party complaint, extrinsic facts known to the insurer may give rise to the duty if they show that a covered claim may nonetheless exist. *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 276 (1966) (finding potential for coverage when policy had exclusion for intentional acts and insured was accused of assault and battery but could have alternatively been liable for *negligent* use of force). "This is so because current pleading rules liberally allow amendment; the third party cannot be the arbiter of coverage." *Montrose*, 6 Cal. 4th at 297 (citing *Gray*, 65 Cal. 2d at 276). Even claims brought against the insured that are frivolous or groundless may activate the insurer's obligation to defend.

*Horace Mann*, 4 Cal. 4th at 1086 (holding that even where the appellate court found the underlying plaintiff's claims to be "insubstantial," the duty to defend nonetheless existed because the insurer should have raised the insubstantial nature of the claims in the defense of the insured).

On the other hand, the duty to defend is not without boundary. *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 210 Cal. App. 4th 915, __, 148 Cal. Rptr. 3d 679, 683-84 (Oct. 29, 2012). "The insurer need not defend where extrinsic facts eliminate the potential for coverage despite allegations in the complaint which suggest potential liability, and where the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Id.* (citing *Montrose*, 6 Cal. 4th at 295). "[T]he universe of facts bearing on whether a claim is potentially covered . . . does not include *made up* facts, just because those facts might naturally be supposed to exist along with the known facts." *Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 34-35 (2004).

On summary judgment, "the insured need only show that the underlying claim *may* fall within policy coverage." *Montrose*, 6 Cal. 4th at 300 (emphasis added). If the insured does so, the burden shifts to the insurer to "prove that it does not." *Id.*

**C. Application**

Tessera argues that St. Paul has a duty to defend because PTI's allegations in the underlying action could support claims for defamation, disparagement, malicious prosecution, and abuse of process, which Tessera alleges are all covered claims under St. Paul's Agreement. St. Paul counters that PTI's allegations in the underlying action cannot support *any* covered claims. St. Paul argues in the alternative that the intellectual property exclusion in the Agreement excuses any duty to defend that may exist.

6

**1. Defamation and Disparagement**

Under California law, a claim for defamation can include either a claim for slander or for libel. *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 111-12 (1998). Libel and slander are both defined under the California Civil Code and require a "false and unprivileged publication," either "by writing," Cal. Civ. Code § 45 (libel), or "orally uttered," *id.* § 46 (slander). Defamation claims protect the plaintiff's interest in his or her privacy, *Ringler Assocs., Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000), and therefore require that the false statement be made at least to a person other than the defamed in order to be published, *Cabesuela*, 68 Cal. App. 4th at 112. The statement also must specifically refer to or concern the plaintiff in some way. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986).

Disparagement liability, also called "trade libel," requires that the accused made a "publication" that was "a false assertion of fact, not an opinion." *Computer Xpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1010-11 (2001). The cause of action requires: (1) a false statement of fact published to a third party, (2) that specifically refers to the plaintiff and derogates the quality of its products, and (3) an injury suffered by the plaintiff because of the false statement. *See Total Call Intern., Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 170-71 (2010).

Tessera contends that PTI's complaints in the underlying actions allege that Tessera made defamatory and disparaging statements directed towards PTI's customers during the ITC proceeding. Tessera points to the following statements from the complaint to support the duty to defend:

- Tessera and PTI were parties to a technology license agreement relating to integrated circuit packages (Fourth Amended PTI Complaint ¶ 1, Stipulation Ex. I);

- "On December 7, 2007, Tessera initiated [the 630 Investigation]" (*id.* ¶ 5);

- Tessera "name[ed] PTI's customers as respondents in the 630 Investigation" (*id.* ¶ 15);

7

- The 630 Investigation "accused PTI-packaged products of infringing four Tessera Patents" (*id.* ¶ 5);

- Tessera "maintained throughout the 620 Investigation that the importation and sale of the PTI-packaged products violated Section 337 of the Tariff Action of 1930" (*id.* ¶ 6);

- By "accusing PTI-packaged products and naming PTI's customers as respondents in the 630 Investigation," Tessera "interfered with, disrupted, and frustrated PTI's relationship with PTI's customer" (*id.* ¶ 15); and

- Tessera's alleged acts "have caused PTI substantial damage of at least $200 million" (*id.* ¶ 21)

Tessera's Opposition Br. 3-4, Dkt. No. 31; *see also* Tessera's Br. 6, Dkt. 30 (citing the same allegations from the Third Amended Complaint).

St. Paul counters that it has no duty to defend because, with respect to defamation, "[t]here are no statements in the [underlying a]ction claiming an injury to PTI's reputation," and with respect to disparagement, "the complaint [in the underlying action] does not allege facts satisfying the requirements of 'publication' and 'specific reference.'" St. Paul's Opposition Br. 9, Dkt. No. 32-2. St. Paul also argues that any statements made during the ITC proceeding cannot support a defamation or disparagement cause of action because they are barred by the litigation privilege under California Civil Code § 47(b).

Section 47(b) provides that communications made in any "judicial proceeding" or "any other official proceeding" are privileged such that they cannot give rise to tort liability. Cal. Civ. Code § 47(b). "The section provides an absolute privilege for a publication filed in a judicial proceeding." *Alpha & Omega Dev., LP v. Whillock Contracting, Inc.*, 200 Cal. App. 4th 656, 664 (2011). "Although originally enacted with reference to defamation actions alone, the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution." *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 29 (1997) (emphasis in original). Section 47(b) does not function like an evidentiary privilege to the extent

that it does not bar the introduction of evidence, but instead acts as a *bar on liability* for privileged statements.  *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986).

Here, every allegation in the underlying action is either: (1) a statement that Tessera made directly to PTI, not a false or disparaging statement *about* PTI to any third-party; or (2) subject to the litigation privilege.  The Fourth Amended Complaint also contains an allegation (not mentioned by Tessera but nonetheless worth addressing) that Tessera asked PTI—outside of the ITC proceeding—to disclose PTI's confidential royalty reports in conjunction with PTI's patent license to one of PTI's customers.  *See* Stip. Ex. I ¶ 33.  While Tessera's request that PTI provide an accounting to a third-party is not subject to the litigation privilege, it was not a false publication made about PTI to a third-party.  Rather it was an accurate disclosure made by PTI to its customer reflecting PTI's royalty payments to Tessera.

The only publications conceivably alleged to be made to a third-party were made during the course of the ITC proceeding, and thus may not be considered to support a claim for defamation or disparagement.  *See* Cal. Civ. Code § 47(b).  In this case, the litigation privilege accorded to these statements is not merely a *defense* that St. Paul could bring in the underlying action against PTI's allegation, *compare with Horace Mann*, 4 Cal. 4th at 1086 (where the "insubstantial" nature of the claims did not excuse coverage, but rather was a *defense* of the insured), but rather a complete bar to potential liability, *see* Cal. Civ. Code §§ 45, 46 (a cause of action *requires* that the publications are "not privileged"); *Old Republic Ins. Co. v. FSR Brokerage, Inc.*, 80 Cal. App. 4th 666, 687 (2000) (holding that because allegations in the complaint fell squarely within the litigation privilege, insured "failed to state an applicable cause of action for bad faith").  In *Horace Mann*, although the court found the molestation claim at issue "insubstantial," the court also held that "the *evidence supported the potential for liability*

9

apparent on the face of the complaint and, with it, Horace Mann's duty to defend." 4 Cal. 4th at 1082 (emphasis added). Unlike in *Horace Mann*, where liability was plausible based on the allegations in the complaint, here the litigation privilege acts as a complete bar to *any* potential for liability. "[W]here extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, we see no reason to prevent an insurer from seeking summary adjudication that *no potential for liability exists and thus that it has no duty to defend*." *Montrose*, 6 Cal. 4th at 298-99 (emphasis added). The court rejects any reasoning to the contrary in the Santa Clara Action, and recognizes that different facts were alleged in the underlying action in that case.

In contrast to the cases cited in Tessera's brief (*Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017 (2002) and *Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*, 207 Cal. App. 4th 969 (2012))—where the allegedly defaming or disparaging statements to customers were not made during litigation, and where the court did not consider the applicability of the litigation privilege—here Tessera relies solely upon PTI's allegations that Tessera named PTI's customers *in the ITC proceeding* and accused PTI products of infringing Tessera's patents *during the course of that proceeding*. Moreover, in *Hartford*, the Court of Appeal recently rejected the reasoning in *Charlotte Russe* as unsound. 148 Cal. Rptr. 3d at 686-87. Because all of the alleged publications raised in the underlying action here are barred from supporting a claim for defamation or disparagement under California's litigation privilege, St. Paul has met its burden of proof that the underlying complaint provides no conceivable theory under which PTI's complaint could support liability for defamation or disparagement.

**2. Malicious Prosecution and Abuse of Process**

Tessera asserts that PTI's allegations in the underlying action could possibly give rise to a malicious prosecution or abuse of process claim. With respect to malicious prosecution, Tessera

relies primarily on *CNA Casualty*, 176 Cal. App. 3d at 608-09 (1986) (holding that allegations that the insured filed "false, frivolous and sham counterclaims . . . raised at least the possibility of liability under the malicious prosecution coverage" in the insurer's policy).  Defendants counter that PTI could not conceivably have alleged a claim for malicious prosecution based on the ITC proceeding because PTI was not a named party in that proceeding.

Tessera misses the mark because, as St. Paul correctly argues, a cause of action for malicious prosecution may only be brought by a party "directly aggrieved" in the proceedings. *See Coverstone v. Davies*, 38 Cal. 2d 315, 324 (1952) (holding that there may be no cause of action for malicious prosecution against "anyone other than the person directly aggrieved"); *Hogen v. Valley Hospital*, 147 Cal. App. 3d 119, 126-27 (1983) (same).  *CNA* is inapplicable because, in that case, the insured party was the *direct target of the underlying litigation* upon which the potential malicious prosecution claim could have been based.  *CNA*, 176 Cal. App. 3d at 608-09.  The mere allegation of harm based on damage to one's *customer* in an ITC proceeding is not a direct injury that would give rise to standing to bring a malicious prosecution claim.

While St. Paul's Agreement does not actually list "abuse of process" as a covered personal injury offense, Tessera relies on *Lunsford v. American Guarantee & Liability Insurance Co.*, 18 F.3d 653, 655-56 (9th Cir. 1994), for the proposition that insurance coverage for malicious prosecution also includes coverage for abuse of process under California law.  Again, Tessera misses the mark.  Tessera points to no convincing authority to persuade the court of any facts in the underlying action that could possibly support a claim for abuse of process when PTI was not involved in, or otherwise *directly* aggrieved by, the ITC proceeding.  Moreover, no facts exist in the underlying action that could plausibly support an abuse of process claim, which requires a willful "misuse of the power of the court."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006).

There are *no* allegations in the underlying action that Tessera willfully used the ITC proceeding for an improper purpose.

### 3. Intellectual Property Exclusion

Because the court holds that nothing in PTI's complaint in the underlying action could possibly give rise to any covered claim under the Agreement, it does not reach the issue of whether the intellectual property exclusion in the Agreement excuses St. Paul from its duty to defend.

## III. ORDER

For the foregoing reasons, the court GRANTS St. Paul's partial motion to dismiss and DENIES Tessera's partial motion to dismiss.

DATED:  November 30, 2012

_____
Ronald M. Whyte
United States District Judge

12