UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ST. PAUL MERCURY INSURANCE COMPANY,<br><br>   Plaintiff,<br><br>   v.<br><br>TESSERA, INC.,<br><br>   Defendant. | Case No.  12-cv-01827-RMW<br><br>**ORDER RE CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 74-3, 78<br>**Redacted Public Version** |

On April 12, 2012, plaintiff St. Paul Mercury Insurance Company filed this action against defendant Tessera, Inc. Dkt. No. 1. Plaintiff seeks a declaratory judgment that St. Paul had no duty to defend Tessera in an underlying action, *Powertech Technology Inc. v. Tessera, Inc.*, Case No. 11-06121, and reimbursement of the amounts that St. Paul paid in defending Tessera pursuant to a reservation of rights. *Id.* Tessera asserts counterclaims against St. Paul, seeking for declaratory judgment that St. Paul had a duty to defend and damages for breach of the insurance contract and breach of the implied covenant of good faith and fair dealing in the insurance contract. Dkt. No. 11.

On October 26, 2012, the parties filed cross-motions for partial summary judgment on the question of whether St. Paul had a duty to defend. Dkt. Nos. 29, 30. The court granted partial summary judgment for St. Paul, holding that none of PTI's allegations in the underlying action could possibly give rise to any "personal injury" claim covered by the insurance policy. Dkt. No

48. Finding no duty to defend, the court did not reach the issue of whether the intellectual property exclusion in the St. Paul policy relieved St. Paul of a defense obligation. Tessera appealed the ruling, and the Ninth Circuit reversed and remanded the case to this court "to consider in the first instance whether the intellectual property exclusion applies. *Id.*

On May 13, 2016, the parties filed partial cross-motions for summary judgment. Dkt. Nos. 74-3, 78. St. Paul moves for summary judgment on St. Paul's claim for declaratory judgments, as well as Tessera's counterclaims for declaratory judgment, Tessera's counterclaim for breach of contract, and Tessera's counterclaim for breach of implied covenant of good faith and fair dealing. Dkt. No. 74-3 at 1. Tessera moves for summary judgment on St. Paul's claim for declaratory judgment and Tessera's counterclaim for declaratory judgment. Dkt. No. 78 at 1. The court heard argument on June 17, 2016. Having considered the submissions of the parties, the court finds that the intellectual property exclusion does not negate an obligation of St. Paul to defend Tessera against PTI's claims in *Powertech.* The court grants Tessera's motion for partial summary judgment and denies St. Paul's motion for partial summary judgment.

## I.   BACKGROUND

On October 20, 2003, PTI and Tessera entered into the Tessera Compliant Chip License Agreement ("TCC License"). *See* Dkt. No. 79-2, Stipulation Regarding Undisputed Facts ("SUF") Ex. D, Appendix A at T-UND000095-123. REDACTED

In December 2007, Tessera initiated an ITC Investigation 337-TA-630, accusing several companies of infringing Tessera's patents by importing and selling semiconductor packages. *See* SUF Ex. D, Appendix B at T-UND0000124-238. PTI was not named as a respondent in the ITC action. *Id.* at T-UND000128-30. The parties do not dispute, however, that PTI customers were among the respondents.

On December 6, 2011, PTI filed suit against Tessera in the Northern District of California, *Powertech Technology Inc. v. Tessera, Inc.*, Case No. 4:11-cv-06121-CW, asserting three causes

of action: 1) declaratory judgment concerning PTI's right to terminate the TCC license, 2) breach of the TCC License, and 3) breach of the implied covenant of good faith and fair dealing. *See* SUF ¶ 4, Ex. D. In the complaint, PTI alleged that Tessera breached the TCC License "by requesting, participating in, and maintaining an ITC investigation accusing PTI-packaged products" and by seeking "exclusion orders that would have excluded PTI-packaged products from the United States." SUF Ex. D ¶¶ 5-8. PTI also alleged that Tessera had "interfered with, disrupted, and frustrated PTI's relationship with PTI's customers by accusing PTI-packaged products and naming PTI's customers as respondents" in the ITC action. SUF Ex. D ¶ 15.

On February 12, 2012, Tessera tendered the defense and indemnity of the *Powertech* to St. Paul. SUF ¶ 5. Tessera was insured by St. Paul for the period between May 1, 2007 and August 15, 2009. *See* SUF ¶¶ 1-3, Exs. A-C. The policy includes a duty to defend "against any claim or suit for injury or damage covered" by the agreement. SUF Ex. A at P000000075-76. Among the "personal injury" offenses covered by the policy is "[m]aking known to any person or organization covered material that disparages the business, premises products, services, work, or completed work of others." *Id.* at P000000075. The policy also includes an intellectual property exclusion clause:

> We won't cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of any of the following rights or laws:
> - Copyright.
> - Patent.
> - Trade dress.
> - Trade name.
> - Trade secret.
> - Trademark.
> - Other intellectual property rights or laws.
>
> Nor will we cover any other injury or damage or medical expenses alleged in a claim or suit that also alleges any such infringement or violation.

*Id.* at P000000090. St. Paul agreed to participate in Tessera's defense against PTI on March 19, 2012, but reserved the right to contest its duty to defend and to seek reimbursement in the future. SUF ¶ 7, Ex. F.

3
12-cv-01827-RMW
ORDER RE CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

On June 3, 2012, PTI added three more causes of action to its complaint in the underlying action: 4) fraud and deceit, 5) patent misuse, and 6) declaratory judgment interpreting the TCC license. *See* SUF ¶ 9, Ex. H. On August, 10, 2012, the district court dismissed PTI's claim seeking royalties for patent misuse on the grounds that patent misuse is an affirmative defense, rather than an independent cause of action. SUF ¶ 11, Ex. J at 9-13. The court granted PTI leave to amend to seek declaratory judgment on the affirmative defense of patent misuse, and PTI amended its complaint accordingly. SUF Ex. J at 13, Ex. K ¶¶ 109-120. PTI filed two more amended complaints to add factual allegations, but PTI did not add any other causes of action. *See* SUF ¶¶ 13,15, Exs. L, N. On September 10, 2012, Tessera asserted counterclaims against PTI for 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, 3) fraud and deceit, 4) negligent misrepresentation, 5) declaratory judgment of indemnification, and 6) declaratory judgment regarding termination of the TCC license. *See* SUF ¶ 14, Ex. M. The underlying action thereafter was resolved by settlement between the parties. *See* SUF ¶¶ 17-18, Ex. P.

In the instant case, both parties seek declarations regarding whether St. Paul had a duty to defend Tessera in the underlying action. *See* Dkt. Nos. 1, 11. St. Paul policy had a duty to defend "against any claim or suit for injury or damage covered" by the insurance contract. SUF ¶ 1, Ex. A at P000000075-76. However, injury or damage "that results from any actual or alleged infringement or violation" of an intellectual property right or law is excluded from coverage. *Id.* at P000000090. The Ninth Circuit has already determined that the facts alleged in PTI's complaint could potentially allege a claim for product disparagement, which would be covered under the policy as a personal injury claim. *See* Dkt. No. 67. The question before this court, therefore, is whether the intellectual property exclusion clause relieves St. Paul of its duty to defend.

## II.   ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Because the scope of coverage under a written insurance policy is solely a matter for judicial interpretation, an insurer's duty to defend under a policy is an issue amenable to resolution

4

on summary judgment." *Grange Ins. Ass'n v. Lintott*, 77 F. Supp. 3d 926, 933 (N.D. Cal. 2015) (citations omitted). The court must determine whether the underlying action includes a claim for "injury or damage" that "result[s] from any actual or alleged infringement or violation" of an intellectual property right or law.

The interpretation of an insurance policy follows the general rules of contract interpretation. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)). The "mutual intention of the parties at the time the contract is formed" governs and should be inferred, if possible, solely from the written provisions of the contract. *Id.* at 647 (citing Cal. Civ. Code §§ 1636, 1639). Contract terms are interpreted in their "ordinary and popular sense," unless the terms are "used by the parties in a technical sense or a special meaning is given to them by usage." *Id.* at 647-48 (citing Cal. Civ. Code § 1644). "If contractual language is clear and explicit, it governs." *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1264-65 (1992). If there is any ambiguity, an insurance policy "must be read in conformity with what the insurer believed the insured understood thereby at the time of formation and, if it remains problematic, in the sense that satisfies the insured's objectively reasonable expectations." *Buss v. Superior Court*, 16 Cal. 4th 35, 45 (1997) (citations omitted).

"[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon*, 31 Cal. 4th at 648 (citations omitted). "The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded." *Id.*; *see also Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 847 F. Supp. 1460, 1467 (N.D. Cal. 1999) ("to prevail in an action seeking declaratory relief, 'the insured must prove the existence of a *potential for coverage,* while the insurer must establish *the absence of any such potential*'") (quoting *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 300 (1993)), *opinion amended on reconsideration*, 875 F. Supp. 656 (N.D. Cal. 1994).

### A. PTI's Allegations Against Tessera

St. Paul argues that the intellectual property exclusion is triggered by PTI's allegations in the underlying action.

#### 1. TCC License Rights

First, St. Paul argues that the intellectual property exclusion clause is triggered by PTI's allegations that Tessera breached the TCC License. St. Paul's theory is that Tessera conveyed intellectual property right to PTI via the license agreement, and that PTI's allegations of breach constitute a claim for damages resulting from infringement or violation of such rights. The court is not persuaded that the TCC License conveys an intellectual property right, or that PTI alleged a violation of an intellectual property right in its complaint.

A patent "does not provide the patentee with an affirmative right to practice the patent but merely the right to exclude." *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (citing 35 U.S.C. § 154(a)(1)). A patentee may enforce its right to exclude by bringing an action for infringement. *See Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1116 (Fed. Cir. 1996) (citing 35 U.S.C. § 281). "It follows, therefore, that a patentee, by license or otherwise, cannot convey an affirmative right to practice a patented invention by way of making, using, selling, etc.; the patentee can only convey a freedom from suit." *TransCore*, 563 F.3d at 1275.

"Parties may transfer patent rights by a legal agreement." *Minco*, 95 F.3d at 1116. "A conveyance of interests in a patent typically constitutes either an assignment or a mere license. An assignment of patent rights operates to transfer title to the patent, while a license leaves title in the patent owner." An assignee, as successor in title, becomes the "patentee," and so may bring an action for infringement. *Id.* (citing 35 U.S.C. § 100(d)). An exclusive license may give the licensee standing to sue with joinder of the patent owner. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551-52 (Fed. Cir. 1995). "If the party has not received an express or implied promise of exclusivity under the patent, *i.e.,* the right to exclude others from making, using, or selling the patented invention, the party has a 'bare license,' and has received only the patentee's promise that that party will not be sued for infringement." *Id.* (citing *Western Elec. Co. v. Pacent Reproducer*

6

1    *Corp.*, 42 F.2d 116, 118, *cert. denied*, 282 U.S. 873 (1930)); *see also De Forest Radio Tel. & Tel.*
2    *Co. v. United States*, 273 U.S. 236, 242 (1927) (patent license "'passes no interest in the
3    monopoly, it has been described as a mere waiver of the right to sue by the patentee'") (quoting
4    *Henry v. A.B. Dick Co.*, 224 U.S. 1, 24 (1912)), *overruled on other grounds by Motion Picture*
5    *Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917)); *Spindelfabrik Suessen-Schurr,*
6    *Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d
7    1075, 1081 (Fed. Cir. 1987) ("patent license agreement is in essence nothing more than a promise
8    by the licensor not to sue the licensee").

9    **REDACTED**

18   St. Paul's argument boils down to the assertion that any use of the term "patent rights" or
19   "intellectual property rights" in a license agreement creates an affirmative intellectual property
20   right, and that a claim brought under the agreement constitutes a claim for "infringement or
21   violation" of such rights. St. Paul cites to numerous cases and the bankruptcy code to support its
22   position that the rights acquired under a patent license are intellectual property rights. *See, e.g.*, 11
23   U.S.C § 365(n)(1) ("If the trustee rejects an executory contract under which the debtor is a licensor
24   of a right to intellectual property, the licensee under such contract may elect . . . to retain its rights
25   . . . to such intellectual property ."); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d
26   1348, 1361 (Fed. Cir. 2008) (three non-exclusive license agreements "include essentially the same
27   grant of patent rights"); *Preston v. State Bd. of Equalization*, 25 Cal. 4th 197, 216 (2001) ("the

United States District Court
Northern District of California

1 license of a patent interest, by definition, gives the licensee the right to make a product or to use a
2 process"). But calling a license a "right" does not create an intellectual property right.

3       As many of the cases cited by St. Paul illustrate, the conveyance of an intellectual property
4 right depends on the terms of the agreement. In *Morrow v. Microsoft*, the Federal Circuit explains
5 that "the type of written instrument (e.g., license or assignment agreement, dissolution agreement,
6 or merger agreement) . . . is irrelevant" to the question of whether patent ownership is transferred.
7 *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 n.3 (Fed. Cir. 2007) ("patent statutes allow
8 the instrument that assigns 'any interest' to take the form of a patent license or any other written
9 instrument that transfers patent rights"); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434
10 F.3d 1336, 1341-42 (Fed. Cir. 2006) ("if a transfer of patent rights, regardless whether it is
11 through an agreement entitled a license or an assignment, includes 'the exclusive right to make,
12 use, and vend' the patented invention, the assignee has standing to bring suit in its own name")
13 (citing *Waterman v. Mackenzie,* 138 U.S. 252, 255-256 (1891)).

14       Other cases by St. Paul offer support for the interpretation of a license as a promise not to
15 sue. For example, in *Wang Labs v. Mitsubishi*, the Federal Circuit explained that a licensor
16 impliedly "consented to [a licensee's] use of the invention, granted the right to make, use, or sell
17 the patented [invention] *without interference* from [licensor], and received consideration." *Wang*
18 *Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1582 (Fed. Cir. 1997) (emphasis added).
19 *Davidson Hydrant* establishes the same point: "According to federal law applicable to patents, a
20 'license' is essentially permission to use, make, or sell intellectual property and a 'promise by the
21 licensor not to sue the licensee.'" *In re Davidson Hydrant Techs., Inc.*, No. BR 11-13349-WHD,
22 2012 WL 987620, at *5 (Bankr. N.D. Ga. Jan. 10, 2012). REDACTED

23
24

25       Furthermore, an action for breach of the terms of patent license agreement arises under
26 state contract law, rather than patent law or any other intellectual property law. *See, e.g.*, *Luckett v.*
27 *Delpark, Inc.*, 270 U.S. 496, 502 (1926) ("general rule that a suit by a patentee for royalties under
28

1   a license or assignment granted by him, or for any remedy in respect of a contract permitting use

2   of the patent, is not a suit under the patent laws of the United States"); *Jim Arnold Corp. v.*

3   *Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) ("It is well settled that if the patentee

4   pleads a cause of action based on rights created by a contract, or on the common law of torts, the

5   case is not one 'arising under' the patent laws."); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599

6   (9th Cir. 1964) ("if the suit is to enforce or to revoke a patent licensing or other similar agreement,

7   it is not a suit under the patent laws of the United States, and cannot be maintained in a federal

8   court as such"); *Farmland Irr. Co. v. Dopplmaier*, 48 Cal. 2d 208, 217, 308 P.2d 732 (1957) ("an

9   action to set aside, specifically enforce, or recover royalties on a patent license contract is not an

10  action arising under the patent laws of the United States for the purpose of determining the

11  exclusive jurisdiction of the federal courts") (citations omitted). REDACTED

12  PTI's claims for breach sound in contract—rather than

13  intellectual property rights—and do not trigger the intellectual property exclusion.

14  **2.   Patent Misuse**

15  REDACTED

19  Tessera argues that patent misuse does not implicate any

20  intellectual property rights or laws.[1] The court is not persuaded that PTI's patent misuse claim is a

21  claim for infringement or violation of an intellectual property right.

---

[1] Tessera also argues that even if PTI's patent misuse claim implicates some independent intellectual property right or law, PTI's patent misuse claim would not trigger the intellectual property exclusion until PTI asserted the claim—four months after Tessera tendered the defense of the underlying action to St. Paul. Tessera also argues that a patent misuse claim cannot trigger the intellectual property exclusion because damages are not available for patent misuse, *see B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d at 1427 (even when "used successfully," patent misuse defense does not "result in an award of damages"), but that even if PTI's original patent misuse claim for damages triggered the exclusion, the exclusion would cease to apply following dismissal of the claim for damages. Because the court finds that PTI's patent misuse claim is not a claim for infringement or violation of an intellectual property right, the court does not reach the parties' arguments regarding the timing of the claim or the nature of relief sought by PTI.

1    To the extent that St. Paul argues that PTI's patent misuse allegations "are also allegations
2 of violations of PTI's rights to intellectual property under the TCC License," the intellectual
3 property exclusion clause is not triggered for the reasons explained above in section II.A.1. To the
4 extent St. Paul argues that PTI's patent misuse claim constitutes an independent claim of injury
5 resulting from violation of an intellectual property right, the intellectual property exclusion clause
6 is not triggered because, as the Ninth Circuit explained in an unpublished opinion, there "is no
7 intellectual property right to be free from patent misuse." *Aurafin-OroAmerica, LLC v. Fed. Ins.*
8 *Co.*, 188 F. App'x 565, 566 (9th Cir. 2006). Patent misuse is an equitable defense to patent
9 infringement that is intended "to restrain *practices that did not in themselves violate any law*, but
10 that drew anticompetitive strength from the patent right, and thus were deemed to be contrary to
11 public policy." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997)
12 (emphasis added) (quoting *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 704 (Fed. Cir.
13 1992)). The policy goal is "to prevent a patentee from using the patent to obtain market benefit
14 *beyond that which inheres in the statutory patent right*." *Mallinckrodt*, 976 F.2d at 704 (emphasis
15 added). The court notes that the Santa Clara County Superior Court considered the same
16 intellectual property exclusion clause in *St. Paul Mercury Insurance Company v. Tessera*
17 *Technologies, Inc., et al.,* Santa Clara Superior Court Case No. 110-cv-172266 and reached the
18 same conclusion with respect to patent misuse: "the pertinent authority indicates that patent
19 misuse does not fall within an intellectual property exclusion because it is not a true intellectual
20 property claim." Dkt. No. 78-1, Ex. 2 at 4 (citing *Aurafin-OroAmerica*, 188 F. App'x at 566).

21   **B.    Tessera's Allegations in ITC Action**

22   St. Paul argues that the intellectual property exclusion clause is triggered by Tessera's
23 allegations, made in the ITC action, that PTI and its customers infringed Tessera's patents. St
24 Paul's theory is that because the ITC action is the basis for PTI's claims against, Tessera, PTI's
25 claims "result" from the infringement alleged by Tessera. St Paul cites *PTC, Inc. v. Charter Oak*
26 *Fire Inurance. Co.*, in which the district court interpreted an intellectual property exclusion
27 provision and found that the "connection between the personal injury alleged and the allegation of
28

United States District Court
Northern District of California

IP infringement need not be an actual claim for IP infringement, so long as the alleged injury has some causal nexus to an alleged dispute over copyright infringement." 123 F. Supp. 3d 206, 215 (D. Mass. 2015).

Tessera argues that the exclusion only applies to claims that would fit in the ordinary definition of an intellectual property claim. According to Tessera, the exclusion can only be triggered by allegations that Tessera itself infringed or violated an intellectual property right—not by Tessera's allegations of infringement by a third party. Tessera argues that "by its plain language," the exclusion "applies only where the insured"—that is, Tessera—"is accused of 'infringement or violation' of intellectual property 'rights or law.'" Dkt. No. 83 at 15. Tessera cites the Santa Clara action involving the same insurance policy, in which the court found that the intellectual property exclusion did not apply because the underlying cross-complaint against Tessera did "not include any allegations that Tessera infringed or violated any intellectual property rights or laws." Dkt. No. 78-1, Ex. 2 at 5. The court is not persuaded that the exclusion must be interpreted quite so narrowly.

However, the court also declines to finds that the intellectual property exclusion applies in this case. PTI does not claim "injury or damage" resulting from any infringement or violation—actual or alleged. Rather, PTI alleges that it was harmed by Tessera's false allegations of infringement. PTI's claims do not depend on infringement claims—they depend on Tessera's *false* allegations of infringement. The exclusion, however, applies to claims for "injury or damage or medical expenses that result from any actual or alleged infringement or violation." The clear language of the exclusion requires that the claimed "injury or damage or medical expenses" result from the actual or alleged infringement or violation—not just that the claim results in some attenuated sense from actual or alleged infringement or violation. The court rejects any reasoning to the contrary in *PTC v. Charter Oak*, and recognizes that the District of Massachusetts interpreted a different insurance policy in that case. *See* 123 F. Supp. 3d at 209-10.

In support of its argument, St. Paul relies on the district court's opinion denying Tessera's motion to strike PTI's claims under California's Anti-SLAPP Statute. SUF Ex. G. The district

court in the underlying action determined that PTI's claims arose from an act in furtherance of Tessera's right to petition the ITC, a protected activity for purposes of the Anti-SLAPP Statute: "But for Tessera's filing and prosecution of the ITC action, PTI would have no basis for the claims against Tessera alleged here. The central thrust of PTI's complaint implicates Tessera's protected activity, because, without the allegations regarding Tessera's protected activity, PTI would be unable to state a claim against Tessera." SUF Ex. G at 15. REDACTED

Any admissions by Tessera, however, that PTI's claims arise out of or relate to PTI's use of Tessera's patented technology or the ITC action are not the same as admissions that PTI's claims seek damages for infringement or violation— whether actual or alleged—of any intellectual property law.

### III.   CONCLUSION

For these reasons, the court grants Tessera's motions for summary judgment on St. Paul's declaratory judgment claim and Tessera's declaratory judgment counterclaim, finding that St. Paul had a duty to defend Tessera in the *Powertech* case. The court denies St. Paul's motions for summary judgment on St. Paul's declaratory judgment claim, Tessera's declaratory judgment counterclaim, Tessera's breach of contract counterclaim, and Tessera's breach of the implied covenant of good faith and fair dealing counterclaim.

The court has redacted portions of this order relating to subject matter designated as confidential by the parties. The court has also filed an unredacted copy of this order that is accessible to case participants only. If either party believes that the redacted portions of this order disclose confidential information, the party must file an administrative motion to file under seal within 14 days of this order. The motion must be accompanied by an unredacted version of the order, filed under seal, highlighting the portions of the order that the party seeks to seal. The motion must also be accompanied by a declaration establishing that such portions of the order are

sealable. No proposed order or redacted version of the order need be filed. If neither party moves to seal any part of this order with 14 days, the order will be made public in its entirety.

**IT IS SO ORDERED.**

Dated: June 21, 2016



Ronald M. Whyte
United States District Judge